ALMADANI LAW
Yasin M. Almadani (SBN 242798)
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph: 949-877-7177
Fax: 949-877-8757
yma@lawalm.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| FIRDOS S. SHEIKH, M.D., an individual, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY; CAROL WEBSTER, Homeland Security Investigations Special Agent, in her individual capacity; EUGENE KIZENKO, Homeland Security Investigations Special Agent, in his individual capacity; and DOES 1-10, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff FIRDOS S. SHEIKH, M.D., on behalf of herself, brings this action demanding a jury trial against Defendants U.S. DEPARTMENT OF HOMELAND SECURITY; CAROL WEBSTER, Homeland Security Investigations Special Agent, in her individual capacity; EUGENE KIZENKO, Homeland Security Investigations Special Agent, in his individual capacity; and DOES 1 to 10, inclusive, (collectively, "Defendants") for violations of Plaintiff's constitutional and civil rights. Dr. Sheikh alleges the following based upon personal knowledge and information and belief:

## I. NATURE OF THE ACTION

1. Dr. Firdos Sheikh is a 62-year-old woman of color who is a Board-certified neurologist with a sub-specialty in electrodiagnostic medicine. As a woman of color, she overcame significant societal obstacles to earn her medical degree in India in the 1980s, graduating from a top university and securing a prestigious internship in neurosurgery. Thereafter, Dr. Sheikh immigrated to the United States, passed her USMLE Board exams, secured a residency in neurology at the prestigious University of California, Davis, School of Medicine, completed her specialty in neurology as Chief Resident, and went on to earn a subspecialty in electrodiagnostic medicine. Prior to starting her own very successful private practice, Dr. Sheikh served as faculty at U.C. Davis for approximately five years. She continued to teach while in private practice, holding two prestigious titles at California North State University: Assistant Clinical Professor of Neurology and Assistant Clinical Professor of Electrodiagnostic Medicine. By 2018, Dr. Sheikh was an extremely successful neurologist and pillar and leader in her community in Elk Grove, California.

2. However, in 2017, the career and life Dr. Sheikh had worked so hard to build were destroyed when Defendants intentionally procured and submitted false evidence against Dr. Sheikh to have her indicted on fabricated charges of human trafficking. Agent Webster, with the assistance of Agent Kizenko, submitted perjurious certifications to United States Citizenship and Immigration Services ("USCIS") to secure immigration benefits for individuals ("Prakash" and "Alfredo") that both agents knew (or

should have known) were lying to secure immigration benefits for themselves. The agents did this so that the Prakash and Alfredo could remain in the United States to offer false testimony against Dr. Sheikh. The extreme injustice Defendants inflicted upon Dr. Sheikh truly shocks the conscience. This lawsuit seeks to vindicate Dr. Sheikh's rights.

## II.   JURISDICTION AND VENUE

3.   This is a civil action brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 2201.

4.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because either Defendants reside in and can be found in this judicial district, and/or a substantial part of the events or omissions giving rise to the claim occurred within the County of Sacramento, State of California, within the Eastern District of California.

## III.   PARTIES

### A.   Plaintiff

5.   Plaintiff FIRDOS S. SHEIKH, M.D. ("Dr. Sheikh") is a 62-year-old, Indian woman who resides in Sacramento County, California. Dr. Sheikh is a Medical-Board-certified neurologist who overcame significant societal obstacles to earn her medical degree in India in the 1980s when women in India faced significant hurdles seeking higher education.

### B.   Defendants

6.   Defendant Department of Homeland Security ("DHS") is a federal cabinet-level department of the U.S. government. DHS is responsible for enforcing U.S. criminal laws, including those relating to noncitizens present in the United States, through its principle investigative arm known as Homeland Security Investigations ("HSI"). DHS and HSI, as well as their agents, have a clear and present duty to follow United States law.

7.   Defendant CAROL WEBSTER ("Webster") is a retired HSI Special Agent sued in her individual capacity. Working as a special agent for HSI, Webster

intentionally submitted false evidence against Dr. Sheikh to have her prosecuted.

8.   Defendant EUGENE KIZENKO ("Kizenko") is a retired HSI Special Agent sued in his individual capacity. Working as a special agent for HSI, Kizenko, in conjunction with Webster and under her supervision and direction, intentionally submitted false evidence against Dr. Sheikh to have her prosecuted.

## IV.   FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

9.   On July 1, 2013, HSI agents Webster and Kizenko conducted a warrantless search of Dr. Sheikh's property (a 20-acre ranch) by misleading Dr. Sheikh into believing that there was a hostage situation on her property. Agents spent several hours on the property investigating a lead they had received of workers being held against their will. However, during the warrantless search what the agents found was a beautiful property easy to enter and exit (Ex. 1-3), and no one being held against their will on the property.

10.   Agents also conducted interviews of three men who had done work for Dr. Sheikh and were all found off the property having left freely: "Gildardo," "Prakash," and "Alfredo." Agents knew that the men were undocumented and seeking immigration benefits by claiming to be victims of human trafficking. The men offered to work with HSI to prosecute Dr. Sheikh expecting immigration benefits. Agents also clearly knew that these men made statements that were materially inconsistent, inconsistent with one another, and objectively inconsistent with what the agents had observed on July 1, 2013.

11.   At bottom, the stories of the alleged victims were clearly false and exaggerated, and any objectively reasonable person could see that, let alone trained agents. But this was the agents' opportunity to bring down a successful doctor who was a pillar of the community. Moreover, Webster did not like Dr. Sheikh because Dr. Sheikh had questioned her authority. The agents thus decided to build a false case against Dr. Sheikh even though they had clearly observed that the alleged "victims" were lying.

12.   On July 8, 2013, Kizenko obtained a search warrant for Dr. Sheikh's home, making numerous materially false statements in the warrant. Defendants conducted a subsequent search of Dr. Sheikh's residence again observing objective evidence of her

innocence. Yet, even after observing objective evidence of the alleged victims' lies for a second time, Defendants continued to pursue a false case against Dr. Sheikh.

13. Agents Webster and Kizenko intentionally wrote reports for prosecutors that omitted exculpatory evidence and credited Prakash and Alfredo's false and exaggerated stories of being held against their will and forced into labor, which the agents knew to be false based on what the agents had observed.

14. Moreover, knowing that the fabricated case would require the testimony of the fake victims Prakash and Alfredo, Webster and Kizenko actively supported Prakash and Alfredo's fraudulent T-Visa applications to USCIS.[1]

15. As to Prakash, on October 6, 2014, Agent Webster certified under penalty of perjury the following statements despite clear, objective evidence to show that Webster knew the statements were false and exaggerated:

16. "[Prakash Karki] worked ten to twelve hours a day, seven days a week for very little pay. . . . The gates to the property were secured with chains and padlocks. [Prakash] was not given a key therefore not able to freely leave the property. Sheikh often threatened [Prakash] with deportation. On July 1, 2013, [Prakash] escaped with the help of HSI who found him hiding on the property during a welfare check."

17. As to Alfredo, on October 6, 2014, Agent Webster certified under penalty of perjury the following statements despite clear, objective evidence to show that Webster knew the statements were false and exaggerated:

18. "[Alfredo] worked twelve hours a day, seven days a week for very little pay. . . . The gates to the property were secured with chains and padlocks. He was not

---

[1] "T nonimmigrant status is a temporary immigration benefit that enables certain victims of a severe form of trafficking [ ] to remain in the United States for an initial period of up to 4 years if they have complied with any reasonable request for assistance from law enforcement in the detection, investigation, or prosecution of human trafficking or qualify for an exemption or exception. T nonimmigrant status is also available to certain qualifying family members of trafficking victims. T nonimmigrants are eligible for employment authorization and certain federal and state benefits and services. T nonimmigrants who qualify may also be able to adjust their status and become lawful permanent residents (obtain a Green Card)." https://www.uscis.gov/humanitarian/victims-of-human-trafficking-and-other-crimes/victims-of-human-trafficking-t-nonimmigrant-status

given a key, therefore, could not freely leave. [Alfredo] was often hungry and had no means to leave to purchase food. Sheikh threatened Alfredo with deportation. . . . On June 24, 2013, [Alfredo] escaped with the help from a previous employee."

19. The false impression Agent Webster provided in her certifications was that of a locked-down compound with production-ranch- or sweatshop-style work hours, that required outside assistance to escape. But at the time, both agents Webster and Kizenko knew that Prakash and Alfredo were living on a beautiful residential ranch that was wide open and very easy to enter and exit. (Ex. 1-3.) The agents observed that there was not all that much work for the men to do, certainly not the hours the agents were representing, and that the men could easily walk on and off the ranch as they pleased, a fact that even the U.S. District Judge commented on at a hearing after seeing photos of the ranch. The agents also knew that Dr. Sheikh worked very long hours and could not possibly have kept the men trapped on her ranch. The agents knew very well that the men had access to a strip mall and cheap eateries a short walking distance from the ranch and every opportunity to leave and return or not at their pleasure. Yet the image Defendants provided to USCIS and the prosecutor's office was that Dr. Sheikh was essentially enslaving Prakash and Alfredo when nothing could be further from the truth.

20. At bottom, agents Webster and Kizenko actively helped Prakash and Alfredo commit immigration fraud to build a false case against Dr. Sheikh and intentionally falsified evidence against her.

21. Based on Defendants' falsified evidence, Dr. Sheikh was indicted on June 21, 2018. As a result, she was booked and held in jail for several hours. Based on Defendants' falsified evidence, the government publicized that Dr. Sheikh was a criminal engaged in human trafficking, thereby destroying her reputation in the community. She endured years of emotional stress having to defend against the false charges. Her life, career, and reputation were decimated and the psychological, reputational, and career injury persists to date.

22. In addition, during the criminal case, prosecutors concealed Agent

Webster's perjurious certifications until late in the case even though the Court had explicitly ordered the government to produce all *Brady* material. The Court later found that there had been a *Brady* violation on the basis of numerous items that were not produced. Importantly, the government did not disclose to Dr. Sheikh until March 11, 2020, the perjurious statements that Agent Webster had made in her I-914B certifications to the USCIS in order to help secure T-Visas for Prakash and Alfredo so that they could remain in the United States and offer testimony against Dr. Sheikh that Defendants knew to be false and perjurious. As experienced federal agents, Webster and Kizenko knew that without the false testimony of Prakash and Alfredo to support the false charges, the fabricated case they had built would implode.

23. The government's criminal case against Dr. Sheikh was ultimately dismissed on October 9, 2020, by the District Court on speedy trial grounds. Having seen the exculpatory evidence for itself, in dismissing the case, the Court wrote:

> The court also finds credible defense counsel's assertion that had the Franks motion been decided by December 2019, defendant would have promptly requested trial, as she did after the court decided the Franks motion in August of this year. The court was available to try this case in the beginning of this year. The court recognizes that it requires some degree of speculation to predict exactly how this case would have proceeded, assuming the government had not delayed in producing the Brady materials at issue. Nevertheless, the court has sufficient confidence that this case would have been tried prior to the court's shutdown in March 2020 if not for the government's belated production.
>
> Had the case been tried at that time, defendant and her counsel believe she would have been exonerated. It is not for the court to judge the reasonableness of that expectation in the context of these motions, <u>but given the evidence presented in the previous motions, the court can well understand the basis for defendant's righteous frustration over not being able to have her case heard and decided when it could have.</u>

*United States v. Sheikh*, Case No. 2:18-CR-119-WBS (Dkt. 151 at 10-11) (emphasis

added).

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### FIFTH AMENDMENT TO THE U.S. CONSTITUTION

### *BIVENS* (FALSE STATEMENTS AND FABRICATION OF EVIDENCE)

### (AIDING AND ABETTING)

(*Against All Defendants*)

24. Plaintiff Firdos Sheikh ("Plaintiff" or "Dr. Sheikh" for purposes of this claim) brings this claim for relief against all Defendants ("Defendants" for purposes of this claim), all of whom aided and abetted one another in the acts alleged in this claim. Plaintiff realleges and incorporates by reference in this claim each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

25. "[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).

26. As described in detail above, Defendants, acting under color of law, intentionally deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and laws of the United States, including the Fifth Amendment, by submitting false evidence against Plaintiff knowing that their false evidence would result in Dr. Sheikh's prosecution. Defendants also worked together to help Prakash and Alfredo commit fraud on USCIS so that these false victims could remain in the United States and offer testimony against Dr. Sheikh that the agents knew to be false.

27. As a direct and proximate result of Defendants' aforementioned acts, Dr. Sheikh was injured as set forth above.

28. The individual defendants are personally liable under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and not immune based on the doctrine of qualified immunity.

**SECOND CLAIM FOR RELIEF**

**FOURTH AMENDMENT TO THE U.S. CONSTITUTION**

***BIVENS* (UNLAWFUL SEIZURE)**

**(AIDING AND ABETTING)**

(*Against All Defendants*)

29.     Plaintiff Firdos Sheikh ("Plaintiff" or "Dr. Sheikh" for purposes of this claim) brings this claim for relief against all Defendants ("Defendants" for purposes of this claim), all of whom aided and abetted one another in the acts alleged in this claim. Plaintiff realleges and incorporates by reference in this claim each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

30.     "The Fourth Amendment protects against unreasonable seizures by the government." *Gonzalez v. ICE*, 975 F.3d 788, 819 (9th Cir. 2020) (citing U.S. Const. amend. IV). "The infringement on personal liberty of any 'seizure' of a person can only be 'reasonable' under the Fourth Amendment if we require the police to possess 'probable cause' *before* they seize him." *Id.* (emphasis in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 38 (1968)). "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

31.     As described in detail above, Defendants, acting under color of law, intentionally deprived Plaintiffs of rights, privileges, and immunities secured by the Constitution and laws of the United States, including the Fourth Amendment, by fabricating evidence against Dr. Sheikh knowing and intending that it would result in Dr. Sheikh seizure and arrest, which it did. As a direct and proximate result of Defendants' unconstitutional acts, Dr. Sheikh was arrested, booked, humiliated, and made to suffer extreme emotional injury. As a direct and proximate result of Defendants' aforementioned acts, Dr. Sheikh was injured as set forth above.

32.     The individual defendants are personally liable under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and not immune based on the doctrine of qualified immunity.

## VI. PRAYER FOR RELIEF

WHEREFORE, on the basis of the foregoing claims, Plaintiff prays that the Court grant judgment against Defendants as follows:

1. General and compensatory damages in an amount according to proof;
2. Special damages according to proof;
3. Costs, restitution, and multiple damages according to proof;
4. Punitive and exemplary damages according to proof;
5. Any and all applicable statutory and civil penalties;
6. Pre- and post-judgment interest on any amounts awarded;
7. An award of attorneys' fees and costs, including expert costs;
8. Leave to amend this complaint to conform to the evidence produced in discovery and at trial; and
9. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.

Dated:  March 3, 2022                    ALMADANI LAW

                                                 By:    */s/ Yasin M. Almadani*
                                                      Yasin M. Almadani, Esq.

                                                      *Attorneys for Plaintiff*