PHILLIP A. TALBERT
United States Attorney
JOSEPH B. FRUEH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
E-mail:      joseph.frueh@usdoj.gov
Telephone: (916) 554-2702
Facsimile:  (916) 554-2900

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRDOS S. SHEIKH, M.D., | Case No. 2:22-cv-00409-WBS-AC |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 1

    A.   Plaintiff's Criminal Case ................................................................................. 1

    B.   Plaintiff's Civil Lawsuit .................................................................................. 4

III. LEGAL STANDARDS ................................................................................................... 5

    A.   Federal Rule of Civil Procedure 12(b)(1) ...................................................... 5

    B.   Federal Rule of Civil Procedure 12(b)(6) ...................................................... 5

IV. ARGUMENT ................................................................................................................. 5

    A.   Plaintiff's claims against DHS must be dismissed for lack of subject-matter jurisdiction because *Bivens* does not authorize suit against federal agencies. ..................... 5

    B.   Plaintiff's claims against Webster and Kizenko must be dismissed because her claims present an improper extension of *Bivens*. ................................................................ 6

         1.   Plaintiff's *Bivens* claims arise in a new context. ..................................... 8

         2.   Special factors counsel hesitation against recognizing Plaintiff's claims. ............ 10

    C.   Even if the Court created a new *Bivens* remedy under the Fifth Amendment, Plaintiff's *Devereaux* claim fails as a matter of law. ....................................... 14

         1.   Plaintiff's *Devereaux* claim fails because a more-specific provision of the Fourth Amendment applies to her circumstances. ............................. 14

         2.   Plaintiff's *Devereaux* claim fails because she does not identify the specific fabricated evidence that formed the basis of the charges against her. ................. 15

         3.   Plaintiff's *Devereaux* claim fails because she does not show that Webster and Kizenko "deliberately" fabricated evidence. .................................... 17

         4.   Plaintiff's *Devereaux* claim fails because she does not show that her injury would not have occurred absent the allegedly fabricated evidence. ................. 18

    D.   Even if the Court created a new *Bivens* remedy under the Fourth Amendment, Plaintiff's unlawful-seizure claim fails as a matter of law. .............................. 19

    E.   Webster and Kizenko are entitled to qualified immunity. ................................ 20

V.   CONCLUSION .............................................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Federal Cases

*Ahmed v. Weyker*,
    984 F.3d 564 (8th Cir. 2020) ................................................................... 7, 9

*Alvarez v. Sitts*,
    No. 19-1071, 2020 WL 5027131 (D. Or. Aug. 25, 2020) ........................... 18

*Annappareddy v. Pascale*,
    996 F.3d 120 (4th Cir. 2021) .............................................................. *passim*

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009) ......................................................................... 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 5, 15, 16

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990) ........................................................................ 5

*Barrera v. City of Woodland*,
    No. 18-329, 2018 WL 4566897 (E.D. Cal. Sept. 21, 2018) ........................ 14

*Beck v. City of Upland*,
    527 F.3d 853 (9th Cir. 2008) ...................................................................... 18

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971) ...................................................................... 1, 9, 10, 21

*Hernández v. Mesa*,
    140 S. Ct. 735 (2020) .................................................................... 6, 7, 8, 10

*Blake v. Bradley*,
    No. 20-5856, 2022 WL 865843 (N.D. Ill. Mar. 23, 2022) ......................... 10

*Bradford v. Scherschligt*,
    803 F.3d 382 (9th Cir. 2015) ................................................................. 15, 17

*Brady v. Maryland*,
    373 U.S. 83 (1963) ........................................................................................ 3

*Butler v. Hesch*,
    No. 16-1540, 2020 WL 1332476 (N.D.N.Y. Mar. 23, 2020) ...................... 11

*Cantú v. Moody*,
    933 F.3d 414 (5th Cir. 2019) ................................................................ *passim*

*Carlson v. Green*,
    446 U.S. 14 (1980) ........................................................................................ 6

*Corr. Servs. Corp. v. Malesko,*
    534 U.S. 61 (2001) ................................................................................................ 6

*Costanich v. Dep't of Soc. & Health Servs.,*
    627 F.3d 1101 (9th Cir. 2010) .......................................................................... 14

*Cox v. United States,*
    No. 16-1222, 2019 WL 297982 (C.D. Cal. Jan. 22, 2019) ........................ 19

*Dalal v. Molinelli,*
    No. 20-1434, 2021 WL 1208901 (D.N.J. Mar. 30, 2021) ......................... 11

*Devereaux v. Abbey,*
    263 F.3d 1070 (9th Cir. 2001) ........................................... 14, 16, 17, 21

*E.E.O.C. v. Farmers Ins. Co.,*
    24 F. Supp. 3d 956 (E.D. Cal. 2014) ............................................................. 18

*Egbert v. Boule,*
    142 S. Ct. 1793 (2022) ................................................................... *passim*

*Emmons v. City of Escondido,*
    921 F.3d 1172 (9th Cir. 2019) .......................................................................... 20

*Farah v. Weyker,*
    926 F.3d 492 (8th Cir. 2019) ......................................................... *passim*

*Davis v. Passman,*
    442 U.S. 228 (1979) ............................................................................................... 6

*Franks v. Delaware,*
    438 U.S. 154 (1978) ............................................................................................... 2

*Galbraith v. County of Santa Clara,*
    307 F.3d 1119 (9th Cir. 2002) .......................................................................... 15

*Garcia v. Kernan,*
    No. 18-2313, 2019 WL 3429175 (S.D. Cal. July 30, 2019) ...................... 14

*Gausvik v. Perez,*
    345 F.3d 813 (9th Cir. 2003) ......................................................... 17, 19, 20

*Gerstein v. Pugh,*
    420 U.S. 103 (1975) ............................................................................................. 18

*Gonzalez v. U.S. Immigr. & Customs Enf't,*
    975 F.3d 788 (9th Cir. 2020) ............................................................................ 21

*Greenlaw v. Klimek,*
    No. 20-311, 2021 WL 6112784 (E.D. Tex. Dec. 27, 2021) ..................... 11

*Holloman v. Watt,*
    708 F.2d 1399 (9th Cir. 1983) ............................................................................ 6

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Huk v. County of Santa Barbara,*
   650 F. App'x 365 (9th Cir. 2016) ............................................................... 14

*J.C. v. County of Los Angeles,*
   No. 18-3045, 2019 WL 4228373 (C.D. Cal. May 13, 2019) ........................ 16

*Kaley v. United States,*
   571 U.S. 320 (2014) .............................................................................. 19, 20

*Karkalas v. Marks,*
   No. 19-948, 2019 WL 3492232, (E.D. Pa. July 31, 2019) ........................ 11

*Kisela v. Hughes,*
   138 S. Ct. 1148 (2018) ............................................................................... 21

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) ....................................................................... 5

*Loe v. United States,*
   No. 21-3348, 2021 WL 6618803 (C.D. Cal. Dec. 7, 2021) ..................... 8, 11

*Long v. Alejo,*
   No. 15-536, 2016 WL 11756789 (C.D. Cal. June 8, 2016) .................... 17, 19

*Manuel v. City of Joliet,*
   137 S. Ct. 911 (2017) ................................................................................. 15

*Miranda v. Arizona,*
   384 U.S. 436 (1966) ..................................................................................... 2

*Mirmehdi v. United States,*
   689 F.3d 975 (9th Cir. 2012) ..................................................................... 12

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985) ................................................................................... 20

*Mullenix v. Luna,*
   577 U.S. 7 (2015) ....................................................................................... 20

*Ninh Dinh Pham v. Starkey,*
   No. 16-5959, 2017 WL 1532049 (C.D. Cal. Mar. 17, 2017) ...................... 15

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ................................................................................... 20

*Pellerin v. Nevada County,*
   No. 12-665, 2013 WL 1284341 (E.D. Cal. Mar. 28, 2013) ........................ 16

*Pryor v. City of Clearlake,*
   877 F. Supp. 2d 929 (N.D. Cal. 2012) ....................................................... 14

*Quinones-Pimentel v. Cannon,*
   No. 20-1443, 2022 WL 826344 (D.P.R. Mar. 17, 2022) ............................... 9

*Quiroz v. United States*,
    No. 21-364, 2021 WL 3772007 (E.D. Cal. Aug. 25, 2021) ...................................... 12

*Selvam v. United States*,
    570 F. Supp. 3d 29 (E.D.N.Y. 2021) ........................................................................ 8

*Sharp v. County of Orange*,
    871 F.3d 901 (9th Cir. 2017) .................................................................................. 21

*Sigman v. United States*,
    217 F.3d 785 (9th Cir. 2000) .................................................................................... 5

*Souliotes v. City of Modesto*,
    No. 15-556, 2016 WL 3549266 (E.D. Cal. June 29, 2016) .................................... 16

*Spencer v. Peters*,
    857 F.3d 789 (9th Cir. 2017) .................................................................................. 18

*Tosco Corp. v. Cmtys. for a Better Env't*,
    236 F.3d 495 (9th Cir. 2001) .................................................................................... 5

*United States v. Calimlim*,
    538 F.3d 706 (7th Cir. 2008) .................................................................................. 17

*United States v. Dann*,
    652 F.3d 1160 (9th Cir. 2011) ................................................................................ 17

*United States v. Djoumessi*,
    538 F.3d 547 (6th Cir. 2008) .................................................................................. 17

*United States v. Mitchell*,
    445 U.S. 535 (1980) .................................................................................................. 6

*W. Radio Servs. Co. v. U.S. Forest Serv.*,
    578 F.3d 1116 (9th Cir. 2009) .................................................................................. 6

*Wagda v. Town of Danville*,
    No. 16-488, 2016 WL 6160160 (N.D. Cal. Oct. 24, 2016) .................................... 15

*White v. Pauly*,
    137 S. Ct. 548 (2017) .............................................................................................. 21

*Xiaoxing Xi v. Haugen*,
    No. 17-2132, 2021 WL 1224164 (E.D. Pa. Apr. 1, 2021) ........................................ 9

*Yassin v. Weyker*,
    No. 16-2580, 2020 WL 6438892 (D. Minn. Sept. 30, 2020) .................................... 9

*Zhang v. Schuster*,
    No. 18-3283, 2022 WL 615015 (N.D. Ill. Mar. 2, 2022) ................................... 9, 11

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ................................................................................. 6, 7, 8, 9

**Federal Statutes**

8 U.S.C. § 1103 ........................................................................................................... 13

18 U.S.C. § 1001 ........................................................................................................... 2

18 U.S.C. § 1324 ........................................................................................................... 2

18 U.S.C. § 1590 ........................................................................................................... 2

18 U.S.C. § 3161 ........................................................................................................... 3

28 U.S.C. § 1495 ........................................................................................................... 13

28 U.S.C. § 2255 ........................................................................................................... 13

42 U.S.C. § 1983 ........................................................................................................... 6, 14

**Federal Regulations and Rules**

8 C.F.R. § 287.10 ......................................................................................................... 13

Fed. R. Civ. P. 12 ......................................................................................................... 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiff Firdos Sheikh alleges that two retired law-enforcement agents from the Department of Homeland Security ("DHS") submitted false evidence against her in violation of the Fifth and Fourth Amendments, resulting in her indictment and arrest for human-trafficking related crimes. Plaintiff's criminal case was dismissed before trial under the Speedy Trial Act.

As detailed below, Plaintiff's *Bivens* claims against DHS and the individual agents must be dismissed for several reasons. First, there is no waiver of sovereign immunity authorizing suit against DHS under *Bivens*. Second, Plaintiff's claims are not actionable because they extend *Bivens* to a "new context," and there are numerous "rational reasons" to believe Congress is better suited to authorize a new damages remedy. *See Egbert v. Boule*, 142 S. Ct. 1793, 1805 (2022). Third, even if this Court created a new *Bivens* remedy, Plaintiff's allegations fail to present cognizable constitutional violations. Fourth, even if this Court created a new *Bivens* remedy, and even if Plaintiff presented cognizable constitutional claims, the individual agents are entitled to qualified immunity.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Criminal Case

The criminal case against Plaintiff was prosecuted by the Civil Rights Division of the Department of Justice, as well as the United States Attorney's Office for the Eastern District of California. *See United States v. Sheikh*, E.D. Cal. No. 2:18-cr-00119-WBS ("Crim. Dkt.") ECF 1, at 1; Crim. Dkt. ECF 96; Crim. Dkt. ECF 111-1, at USA000297, USA000326. The case arose from an investigation by Homeland Security Investigations ("HSI"), a division of DHS's Immigration and Customs Enforcement. *See* Crim. Dkt. ECF 1, at 3–4.

The government alleged that, between 2008 and 2013, Plaintiff harbored and forced two noncitizens, "Prakash" and "Alfredo" (sometimes spelled "Elfredo"), to maintain and improve her 21-acre ranch along with other services and properties. *See* Crim. Dkt. ECF 1, at 1–3; Crim. Dkt. ECF 85, at 2:5–2:14. According to the government, Plaintiff enticed the men to live and work on her property with of the promise of $400 per week, plus housing and food, in exchange for 40 hours of work per

week.  Crim. Dkt. ECF 85, at 2:15–2:21.  When the men arrived, however, Plaintiff paid them less than $100 per week, provided little food and substandard housing, and required them to work long hours.  *Id.* at 2:21–2:24.  And when the men complained, Plaintiff threatened them with arrest and deportation, and falsely promised to remedy their living conditions and outstanding wages, thus coercing them to continue working for her to avoid legal and financial harm.  *Id.* at 2:24–3:2.

Among other things, HSI's investigation included a "welfare check" at Plaintiff's ranch on July 1, 2013, and the execution of a search warrant on July 9, 2013.  *See* Crim. Dkt. ECF 1, at 3; Crim. Dkt. ECF 85, at 3:2–3:5; Crim. Dkt. ECF 82, at 403:9–408:18.  The government alleged that Plaintiff directed Prakash to hide from agents during the welfare check and made false statements to HSI agents during their investigation.  Crim. Dkt. ECF 1, at 3–4.

On June 21, 2018, a grand jury indicted Plaintiff for violations of 18 U.S.C. § 1590(a) (trafficking with respect to forced labor); § 1324(a)(1)(A)(iii), (B)(i) (harboring for financial gain); § 1590(b) (obstruction of forced-labor investigation); and § 1001 (false statements).  *See* Crim. Dkt. ECF 1.  Pursuant to the indictment, this Court issued a warrant for Plaintiff's arrest, and she presented for her initial appearance.  *See* Crim. Dkt. ECF 8, 12.  The government did not seek detention, and she was released on bond, with conditions.  *See* Crim. Dkt. ECF 14.  The Court later modified these conditions in light of Plaintiff's state-court prosecution for presenting false Medi-Cal claims, healthcare insurance fraud, and grand theft.  *See* Crim. Dkt. ECF 37, 38; *see also* Crim. Dkt. ECF 42, 47, 66.  *See generally California v. Sheikh*, Sacramento Super. Ct. No. 19FE004439.

Plaintiff moved to suppress statements and evidence obtained during the welfare check at her ranch on July 1, 2013, alleging that agents obtained them in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and the Fourth Amendment.  *See* Crim. Dkt. ECF 82, at 403:9–408:18.  The Court rejected these contentions and denied her motion.  *See id.*

Plaintiff then moved to suppress evidence obtained during the search of her ranch on July 9, 2013, contending the warrant was not supported by probable cause, and the Court set an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  *See* Crim. Dkt. ECF 104, at 2:4–2:11.  Meanwhile, Plaintiff moved to dismiss the indictment, alleging the government violated its obligation

under *Brady v. Maryland*, 373 U.S. 83 (1963), to timely disclose materials helpful to her suppression motion. *See id.* at 2:10–2:21, 4:2–4:4.

The Court found the government should have turned over certain materials sooner, which materials undercut certain allegations of forced labor by "physical force, physical restraint, or physical harm." *See id.* at 5:2–9:4 & n.6. But the Court declined to dismiss the indictment, noting that the Court postponed the *Franks* hearing and offered to reopen prior proceedings, and that the material was disclosed in advance of trial, was not the subject of intentional or reckless false statements to the Court, and was not "obviously" *Brady* material. *See id.* at 13:1–13:15.

The Court held the *Franks* hearing, and thereafter denied Plaintiff's motion to suppress. *See* Crim. Dkt. ECF 122. The Court noted that the search-warrant affidavit appeared to "overstate[] the gravity of physical force, restraint, and harm or threats of physical force, restraint, and harm faced by Prakash and Alfredo." *See id.* at 6:1–6:5. But the Court held that the forced-labor statute has "been interpreted broadly to cover harm such as [the] failure to pay wages or threats of immigration harm," and there were "numerous allegations in the affidavit that together raise a fair probability that a search of [Plaintiff's] property would result in evidence of forced labor via financial or immigration harm." *Id.* at 9:17–9:19, 10:19–10:22; *see also* Crim. Dkt. ECF 104, at 6 n.6.

Plaintiff then moved to dismiss the indictment again, this time under the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161. *See* Crim. Dkt. ECF 151. The Court granted the motion under the Speedy Trial Act and dismissed the indictment without prejudice. *Id.*

Specifically, the Court found that, given the state of the COVID-19 pandemic, the case could not be brought to trial within the time prescribed by the Speedy Trial Act without an ends-of-justice exclusion. *Id.* at 6:2–6:4. The Court then found that several factors counseled against an ends-of-justice exclusion, namely the Court's inability to select a future trial date that would not "amount to kicking the can down the road," and the Court's "confidence that [the] case would have been tried prior to the [Court's] shutdown in March 2020 if not for the government's belated production" of *Brady* material. *Id.* at 8:9–8:15, 9:12–9:14, 11:3–11:6; *see also id.* at 13:13–13:15 ("[T]he two primary factors which lead to dismissal are the government's late disclosure of *Brady* material and the coronavirus.").

1   The Court elected to dismiss the indictment without prejudice, again considering several factors.

2   *Id.* at 12:12–12:27.  The Court noted the government was "not at fault for the coronavirus"; the delay

3   after indictment was "not especially abnormal"; Plaintiff was not in custody; and her "change of counsel

4   and various motions also contributed to the total delay."  *Id.* at 13:13–13:26.  Further, "the potential for

5   20-year sentences in [the] case, including for the obstruction count, weigh[ed] in favor of dismissal

6   without prejudice."  *Id.* at 13:10–13:12; *see id.* at 13:5–13:8 (rejecting Plaintiff's claim that "the

7   harboring and false statement and obstruction charges 'are not all that serious'").

8       **B.    Plaintiff's Civil Lawsuit**

9       After the Court dismissed Plaintiff's criminal case, she filed this civil lawsuit against DHS and

10  retired HSI agents Carol Webster and Eugene Kizenko.  Plaintiff alleges the agents "intentionally

11  procured and submitted false evidence against [Plaintiff] to have her indicted on fabricated charges of

12  human trafficking."  Compl. ¶ 2; *see id.* ¶¶ 7–8.  Specifically, Plaintiff avers that "both agents knew (or

13  should have known)" that Prakash and Alfredo "were lying to secure immigration benefits for

14  themselves," and that their statements were "false and exaggerated."  *Id.* ¶¶ 2; *see id.* ¶¶ 11, 13, 15, 17.

15      Plaintiff alleges the agents knew or should have known the men were lying because:

16  •   The men were living on a "beautiful residential ranch" that was "wide open" and "very easy

17      to enter and exit."  *Id.* ¶ 19; *see also id.* (alleging "the men could easily walk on and off the

18      ranch as they pleased" and had "every opportunity to leave and return or not").

19  •   There was "not all that much work for the men to do" on the ranch.  *Id.*

20  •   Plaintiff "worked very long hours."  *Id.*

21  •   There was "a strip mall and cheap eateries" near the ranch.  *Id.*

22      Plaintiff further alleges the agents credited Prakash's and Alfredo's statements in reports to

23  prosecutors and in supporting declarations for the men's applications for T-nonimmigrant status ("T-

24  visas"), a program under the Victims of Trafficking and Violence Protection Act that allows certain

25  noncitizens to remain in the United States while assisting a trafficking prosecution.  *Id.* ¶¶ 13–20 & n.1.

26      Based on these allegations, Plaintiff asserts two *Bivens* claims.  *See id.* ¶¶ 24–32.  First, she

27  alleges a violation of the Fifth Amendment arising from Webster's and Kizenko's alleged submission of

28  "false evidence" that resulted in her prosecution.  *See id.* ¶¶ 25–26.  She also alleges a violation of the

Fourth Amendment, based on Webster and Kizenko allegedly "fabricating evidence" that resulted in her seizure and arrest.  *See id.* ¶¶ 30–31.

## III.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's jurisdiction to decide claims alleged in the complaint.  Fed. R. Civ. P. 12(b)(1); *see also id.* 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  In response to a motion under Rule 12(b)(1), the plaintiff has the burden of proving subject-matter jurisdiction.  *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

### B.   Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint or cause of action that fails as a matter of law.  *See* Fed. R. Civ. P. 12(b)(6).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Courts may consider documents that are not physically attached to the complaint if they are matters of public record, subject to judicial notice, or if their authenticity is not contested and the complaint necessarily relies on them.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  And courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 678–79 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets omitted).

## IV.   ARGUMENT

### A.   Plaintiff's claims against DHS must be dismissed for lack of subject-matter jurisdiction because *Bivens* does not authorize suit against federal agencies.

"Suits against the United States and its agencies are barred by sovereign immunity unless permitted by an explicit waiver of immunity from suit."  *Sigman v. United States*, 217 F.3d 785, 792

(9th Cir. 2000). A waiver of sovereign immunity is a jurisdictional prerequisite, *United States v. Mitchell*, 445 U.S. 535, 538 (1980), and the plaintiff "bears the burden of pointing to such an unequivocal waiver of immunity," *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983).

Here, Plaintiff fails to identify an explicit waiver of sovereign immunity authorizing her claims against DHS. She cites *Bivens* as the basis for these claims (*see* Compl. ¶ 3 & pp. 8:2–8:7, 9:1–9:5), but "the Supreme Court has held that no *Bivens* remedy is available against a federal agency." *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009) (citing *FDIC v. Meyer*, 510 U.S. 471, 484 (1994)). Plaintiff's claims against DHS accordingly must be dismissed for lack of subject-matter jurisdiction.

**B.      Plaintiff's claims against Webster and Kizenko must be dismissed because her claims present an improper extension of *Bivens*.**

In 1871, President Ulysses S. Grant signed into law a private cause of action against state officials for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. For the next 100 years, Congress declined to authorize such a remedy against federal employees. But then, in *Bivens*, the Supreme Court arrogated to itself the Legislative Power reserved for Congress, divining an "implied" cause of action under the Fourth Amendment against federal agents who searched and arrested the plaintiff in his home without a warrant.

After *Bivens*, the Supreme Court found an implied cause of action in the Constitution twice more. First, in *Davis v. Passman*, 442 U.S. 228 (1979), for a sex-discrimination claim against a Congressman under the Fifth Amendment, and then again in *Carlson v. Green*, 446 U.S. 14 (1980), for a claim of inadequate medical care against federal jailers under the Eighth Amendment. Since 1980, however, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020) (collecting cases); *see Egbert v. Boule*, 142 S. Ct. 1793, 1799 (2022) ("Over the past 42 years . . . we have declined 11 times to imply a similar cause of action for other alleged constitutional violations.").

The Supreme Court now has recognized that *Bivens*, *Davis*, and *Carlson* were the aberrant byproducts of an "*ancien regime*." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017); *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J., concurring) ("*Bivens* is a relic of the heady days in

which this Court assumed common-law powers to create causes of action—decreeing them to be 'implied' by the mere existence of a statutory or constitutional prohibition.").  The Court has "gone so far as to observe that if the Court's three *Bivens* cases [had] been . . . decided today, it is doubtful that [it] would have reached the same result."  *Hernández*, 140 S. Ct. 735, 742–43 (internal quotation marks omitted) (first alteration in original).  And the Court has deemed any expansion beyond these three *Bivens* cases to be "a 'disfavored' judicial activity."  *Id.* at 742.

That is because Congress—not the Judiciary—is tasked with assessing "whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government based on constitutional torts."  *Id.*; *see Egbert*, 142 S. Ct. at 1800 ("[O]ur cases have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts.").  Accordingly, in any case seeking damages against a federal employee for a constitutional violation, a federal court must apply a two-step inquiry.

First, the court asks whether the particular claim "arises in a 'new context'" as compared to *Bivens*, *Davis*, and *Carlson*.  *See Hernández*, 140 S. Ct. at 743.  A context is "new" if it is "different in a meaningful way" from the Supreme Court's three *Bivens* cases.  *Id.*

This "new-context inquiry" is "easily satisfied," for even "small" differences are meaningful.  *Abbasi*, 137 S. Ct. at 1865; *see Hernández*, 140 S. Ct. at 743 ("[O]ur understanding of a 'new context' is broad.").  Meaningful differences may include "the constitutional right at issue"; the "extent of judicial guidance as to how an officer should respond to the problem"; the "statutory or other legal mandate under which the officer was operating"; the "risk of disruptive intrusion by the Judiciary into the functioning of other branches"; or the presence of any other "potential special factors that previous *Bivens* cases did not consider."  *Abbasi*, 137 S. Ct. at 1859–60.  "When one or more meaningful differences exist, it is not enough to identify a few similarities."  *Ahmed v. Weyker*, 984 F.3d 564, 570 (8th Cir. 2020); *see id.* ("If the test sounds strict, it is.").

If a claim arises in a new context, the court then asks whether there are "special factors" that counsel "hesitation" about granting the extension.  *Hernández*, 140 S. Ct. at 743.  Again, the Supreme Court has "not attempted to create an exhaustive list," but "central to this analysis are separation-of-powers principles"—*e.g.*, "the risk of interfering with the authority of the other branches," and whether

"there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy." *Id.* (internal quotation marks, brackets, and citations omitted).

"If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (quoting *Hernández*, 140 S. Ct. at 743); *see Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) ("'Hesitation' is 'counseled' whenever thoughtful discretion would pause even to consider."). This "does not take much," for Congress "is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1857); *Loe v. United States*, No. 21-3348, 2021 WL 6618803, at *6 (C.D. Cal. Dec. 7, 2021) ("The threshold for whether a factor 'counsels hesitation' is 'remarkably low.'" (quoting *Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020))); *accord Arar*, 585 F.3d at 574.

### 1.     Plaintiff's *Bivens* claims arise in a new context.

Plaintiff's Fifth-Amendment claim plainly arises in a new context. *See* Compl. ¶¶ 24–28. The only Supreme Court case finding a *Bivens* claim under the Fifth Amendment is *Davis*, and that case involved an employment-discrimination claim. There simply is no parallel here. *See Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) ("No one thinks *Davis* . . . means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action."); *see also, e.g.*, *Annappareddy v. Pascale*, 996 F.3d 120, 134 (4th Cir. 2021) (holding that "fabrication and destruction of evidence claims" were "far afield from the sex discrimination context presented in *Davis*" (brackets and internal quotation marks omitted)); *Selvam v. United States*, 570 F. Supp. 3d 29, 45 (E.D.N.Y. 2021) (holding that a "fabrication-of-evidence claim" under the Fifth Amendment "matches none of the contexts recognized in *Bivens*, *Davis*, and *Carlson*").

Plaintiff's Fourth-Amendment claim fares no better. *See* Compl. ¶¶ 29–32. Of course, *Bivens* itself found a cause of action under the Fourth Amendment. But "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized," *Hernández*, 140 S. Ct. at 743, for "even a modest extension is still an extension," *Abbasi*, 137 S. Ct. at 1864. *See Cantú*, 933 F.3d at 422 (noting the Supreme Court "rejected just this sort of 'same right' reasoning"); *see also Egbert*, 142 S. Ct. at 1805 (reversing the Ninth

Circuit's recognition of a *Bivens* remedy for an excessive-force claim under the Fourth Amendment that involved "almost parallel circumstances" as *Bivens* itself).  And *Bivens* is readily distinguishable from this case in several meaningful ways.

*First*, the "alleged misdeeds are different from those in *Bivens*."  *Farah*, 926 F.3d at 498.  In *Bivens*, agents "manacled [the plaintiff] in front of his wife and children," "threatened to arrest [his] entire family," "searched [his] apartment from stem to stern," and then "interrogated, booked, and subjected [him] to a visual strip search"—all without a warrant.  *See* 403 U.S. at 389.  Here, by contrast, Plaintiff alleges that Webster and Kizenko "procured and submitted false evidence against [her] to have her indicted on fabricated charges of human trafficking."  Compl. ¶ 2.  "These information-gathering and case-building activities are a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*."  *Farah*, 926 F.3d at 499; *see Ahmed*, 984 F.3d at 568 (holding that allegations of "[l]ying and manipulation, however bad they might be, are simply not the same as the physical invasions that were at the heart of *Bivens*"); *Zhang v. Schuster*, No. 18-3283, 2022 WL 615015, at *10 (N.D. Ill. Mar. 2, 2022) ("A false statement is different than a physical invasion of someone's home, which is what took place in *Bivens*.  And claims that a federal officer lied or presented false evidence is different than a claim that a federal officer unlawfully physically searched and seized a person." (citations omitted)).[1]

*Second*, because the alleged misdeeds are different, the precise constitutional guarantee also is distinct.  *Cantú*, 933 F.3d at 422 ("Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'").  *Bivens* concerned the right to be free from warrantless searches and seizures in the home, but Plaintiff's claim challenges an arrest and prosecution that were supported by a grand-jury indictment and an arrest warrant.  *See* Compl. ¶¶ 2, 21, 29–32; Crim. Dkt. ECF 1, 12.  Plaintiff's claim thus involves a different "legal mandate," as well as different "judicial guidance" regarding officer conduct.  *Abbasi*, 137 S. Ct. at 1860; *see Annappareddy*, 996 F.3d at 135–36 (holding that the "right at issue" was "meaningfully

---

[1] *See also, e.g.*, *Quinones-Pimentel v. Cannon*, No. 20-1443, 2022 WL 826344, at *20 (D.P.R. Mar. 17, 2022); *Xiaoxing Xi v. Haugen*, No. 17-2132, 2021 WL 1224164, at *17 (E.D. Pa. Apr. 1, 2021); *Yassin v. Weyker*, No. 16-2580, 2020 WL 6438892, at *6 (D. Minn. Sept. 30, 2020).

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS

different" from *Bivens* because it involved "searches and a seizure conducted *with* a warrant"); *Cantú*, 933 F.3d at 423 (noting that "'[j]udicial guidance' differs across the various kinds of Fourth Amendment violations," and finding a new context where officers allegedly "falsified affidavits," rather than "entered [a] home without a warrant"); *Blake v. Bradley*, No. 20-5856, 2022 WL 865843, at *4 (N.D. Ill. Mar. 23, 2022) (following *Cantú*).

*Third*, "the mechanism of injury is different." *Farah*, 926 F.3d at 499. In *Bivens*, the plaintiff's alleged injuries—"humiliation, embarrassment, and mental suffering"—were directly caused by the officers who searched and arrested him. *See* 403 U.S. at 389–90. Here, Defendants' alleged actions injured Plaintiff "through a series of intervening steps" involving "decisions by independent legal actors"—the prosecutors who chose to pursue charges against her, the grand jury that voted to indict her, and the judges who approved search and arrest warrants. *Farah*, 926 F.3d at 499; *see* Crim. Dkt. ECF 1, 12, 111-1. "The connection between the officers' conduct and the injury thus involves intellectual leaps that a textbook forcible seizure never does." *Cantú*, 933 F.3d at 423.

*Finally*, proving Plaintiff's Fourth-Amendment claim would require "'a different type of showing' than did the claims in *Bivens*—one that would pose a greater risk of intruding on the investigatory and prosecutorial functions of the executive branch." *Annappareddy*, 996 F.3d at 136 (quoting *Ahmed*, 984 F.3d at 569). Probing the causal chain in this case "would involve delving into the evidence before numerous decisionmakers, including federal investigators, prosecutors, and the grand jury"—*e.g.*, what Webster and Kizenko allegedly said, to whom, and when; whether the information was false; and "whether other evidence . . . would have independently led" to Plaintiff's indictment and arrest. *Farah*, 926 F.3d at 499. "Only then, after probing executive charging decisions and peeking behind the curtain of customarily secret grand-jury proceedings, would [Plaintiff] be able to prove [her] case. Nothing so intrusive was required to prove the claims in *Bivens*." *Id.*; *see Annappareddy*, 996 F.3d at 136 ("*Bivens* did not require this type of fact-checking and conscience-probing, . . . which can, as the Supreme Court has warned, impose 'substantial costs.'" (quoting *Ahmed*, 984 F.3d at 569)).

## 2. Special factors counsel hesitation against recognizing Plaintiff's claims.

Because Plaintiff seeks an implied damages remedy in a "new context," the Court must determine whether any "special factors" counsel "hesitation" against granting the extension. *Hernández*,

140 S. Ct. at 743.  That is, "whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Egbert*, 142 S. Ct. at 1805 (quoting *Abbasi*, 137 S. Ct. at 1858).  As detailed below, such reasons are plentiful here.

*First*, hesitation is warranted given "the length of time Congress has gone without statutorily creating a *Bivens*-type remedy for this context."  *Cantú*, 933 F.3d at 423; *Greenlaw v. Klimek*, No. 20-311, 2021 WL 6112784, at *8 (E.D. Tex. Dec. 27, 2021) ("Because respect for the separation of powers lies at the heart of the special-factors inquiry, this Court 'must consider what Congress has done and what Congress has left undone.'" (quoting *Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020))).  And "[b]ecause Congress has long been on notice that the Supreme Court is disinclined to extend *Bivens* to new contexts, its failure to provide a damages remedy here suggests more than mere oversight."  *Butler v. Hesch*, No. 16-1540, 2020 WL 1332476, at *12 (N.D.N.Y. Mar. 23, 2020) (quoting *Cantú*, 933 F.3d at 423) (citations and internal quotation marks omitted); *Zhang*, 2022 WL 615015, at *14 ("Congress knows what it's doing, and what it's *not* doing.").

*Second*, there is "the risk that a *Bivens* action" for Plaintiff's claims "would require courts to interfere in the executive branch's investigative and prosecutorial functions."  *Annappareddy*, 996 F.3d at 137 (citing *Abbasi*, 137 S. Ct. at 1861); *Loe*, 2021 WL 6618803, at *7.  As discussed above, Plaintiff's claims "would invite a wide-ranging inquiry into the evidence available to investigators, prosecutors, and the grand jury."  *Farah*, 926 F.3d at 500–01 ("Reconstructing the record before the grand jury, contemplating a panoply of federal crimes, and determining whether it would have been reasonable to think that [Plaintiff] committed any of them would be among the likely steps in the analysis.").  Such "after-the-fact inquiries . . . pose a risk of intrusion on executive-branch authority to enforce the law and prosecute crimes, not to mention encroach on the usual secrecy of charging decisions and grand-jury proceedings."  *Id.* at 501; *see Dalal v. Molinelli*, No. 20-1434, 2021 WL 1208901, at *5 (D.N.J. Mar. 30, 2021); *see also Karkalas v. Marks*, No. 19-948, 2019 WL 3492232, at *12 (E.D. Pa. July 31, 2019) (holding that the secrecy of grand-jury proceedings was a standalone special factor counseling hesitation), *aff'd*, 845 F. App'x 114 (3d Cir. 2021).

*Third*, the investigation and prosecution in this case involved cross-border human trafficking.  *See* Crim. Dkt. ECF 1, at 1–3 (charging Plaintiff with trafficking undocumented foreign nationals for

labor and services in violation of the forced-labor statute, and with harboring them for financial gain).

Creating a new remedy here is thus particularly imprudent, for "[m]atters intimately related to foreign

policy and national security are rarely proper subjects for judicial intervention." *Egbert*, 142 S. Ct.

at 1804–05 (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)) (brackets in original) (declining to

recognize an excessive-force claim against a DHS employee who was checking the immigration status

of a foreign national staying at the plaintiff's bed-and-breakfast); *Cantú*, 933 F.3d at 424 (holding that

"[a] final special factor counseling hesitation is the nature of the underlying federal law enforcement

activity," which "implicates the security of our international border"); *Mirmehdi v. United States*,

689 F.3d 975, 982 (9th Cir. 2012) (observing that "immigration issues 'have the natural tendency to

affect diplomacy, foreign policy, and the security of the nation,' which further 'counsels hesitation' in

extending *Bivens*" (quoting *Arar*, 585 F.3d at 574)).

  *Fourth*, and relatedly, Plaintiff alleges that Defendants violated her rights by submitting

inaccurate certifications for her victims' applications for T-visas,[2] a nonimmigrant visa authorized under

the Victims of Trafficking and Violence Protection Act ("VTVPA") that allows certain noncitizens to

remain in the United States while assisting a trafficking prosecution. *See* Compl. ¶¶ 2, 14–20 & n.1.

Creating a *Bivens* remedy against officers who provide allegedly inaccurate T-visa certifications may

chill officers' willingness to provide them. *See Egbert*, 142 S. Ct. at 1807 ("Recognizing any new

*Bivens* action 'entail[s] substantial social costs, including the risk that fear of personal monetary liability

and harassing litigation will unduly inhibit officials in the discharge of their duties.'" (quoting *Anderson*

*v. Creighton*, 483 U.S. 635, 638 (1987)) (brackets in original)).  And this, in turn, may discourage "the

reporting of crimes . . . by trafficked, exploited, victimized, and abused aliens who are not in lawful

immigration status," contrary to Congress's stated purpose for the T-visa program. *See* VTVPA, Pub. L.

No. 106-386, § 1513, 114 Stat. 1464, 1534 (2000).  Weighing the costs and benefits of a *Bivens* remedy

in this context is a quintessential legislative function. *See Quiroz v. United States*, No. 21-364, 2021

WL 3772007, at *5 (E.D. Cal. Aug. 25, 2021) ("It is sufficient for the Court to recognize that 'Congress

might doubt the efficacy or necessity of a damages remedy' because there is a risk that it would . . .

---

  [2] *See* USCIS Form I-914, Supplement B, Declaration of Law Enforcement Officer for Victim of
Trafficking in Persons, https://www.uscis.gov/sites/default/files/document/forms/i-914supb.pdf.

disincentivize private citizens from sharing information with law enforcement." (quoting *Abbasi*, 137 S. Ct. at 1865)), *adopted*, 2021 WL 4262625 (E.D. Cal. Sept. 20, 2021).

*Fifth*, there is "the existence of 'an alternative remedial structure,' even if it does not go so far as a *Bivens* remedy would." *Annappareddy*, 996 F.3d at 137 (quoting *Abbasi*, 137 S. Ct. at 1858). "[T]hat alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 142 S. Ct. at 1804 (internal quotation marks omitted).

For example, the Hyde Amendment allows courts to award attorneys' fees to criminal defendants who prevail against "vexatious, frivolous, . . . bad faith" prosecutions. *See* Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997). Those who are wrongly convicted and sentenced also may seek release under 28 U.S.C. § 2255, or sue for damages under 28 U.S.C. § 1495, which creates a cause of action for damages for "any person unjustly convicted of an offense against the United States and imprisoned." And DHS is obligated by statute to "control, direc[t], and supervis[e] . . . all employees," *see* 8 U.S.C. § 1103(a)(2), and must investigate "[a]lleged violations of the standards for enforcement activities" and accept grievances from "[a]ny persons wishing to lodge a complaint." 8 C.F.R. § 287.10(a)–(b).

Plaintiff may complain that these remedies are not available to her, or they do not go far enough. *See, e.g.*, 28 U.S.C. § 2255(a) (limiting relief to "prisoner[s] in custody under sentence of a [federal] court"); *id.* § 1495 (requiring "convict[ion]" and "imprison[ment]"); Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (providing attorneys' fees, but not compensatory damages or other relief); 8 C.F.R. § 287.10(a)–(b) (providing no monetary relief). But that "actually cuts against recognizing a new cause of action." *Farah*, 926 F.3d at 502. The fact that Congress and the Executive have provided some remedies for some victims of this type of injury, but not all remedies for all victims, suggests they considered the issue and made deliberate choices. *See id.* (noting "even remedies that provide *no* compensation for victims and little deterrence for violators, such as injunctions and writs of habeas corpus, trigger the general rule that, 'when alternative methods of relief are available, a *Bivens* remedy usually is not'" (quoting *Abbasi*, 137 S. Ct. at 1863)); *see also Egbert*, 142 S. Ct. 1806–07 (holding that the grievance process provided under 8 C.F.R. § 287.10(a)–(b) precluded a *Bivens* remedy against a DHS employee). "This is a 'convincing reason' not to imply a second, distinct 'freestanding remedy in damages.'" *Farah*, 926 F.3d at 502 (quoting *Abbasi*, 137 S. Ct. at 1858).

\*    \*    \*

In sum, Plaintiff's *Bivens* claims arise in a "new context" that is meaningfully different from *Bivens*, *Davis*, and *Carlson*.  And there is at least one "rational reason . . . to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Egbert*, 142 S. Ct. at 1805 (quoting *Abbasi*, 137 S. Ct. at 1858); *see id.* at 1803 ("If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." (quoting *Hernández*, 140 S. Ct. at 743)).  Accordingly, Plaintiff's lawsuit must be dismissed.

## C.    Even if the Court created a new *Bivens* remedy under the Fifth Amendment, Plaintiff's *Devereaux* claim fails as a matter of law.

In *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) (en banc), the plaintiff sued state employees under 42 U.S.C. § 1983 for allegedly manipulating and coercing children to give false evidence of sexual abuse against him.  The Ninth Circuit rejected the plaintiff's claims, *see id.* at 1082, but in the course of doing so, recognized a "due process right" under the Fourteenth Amendment "not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government," *id.* at 1074–75.  As detailed below, even if a *Devereaux* claim could proceed under *Bivens* as a Fifth-Amendment violation, Plaintiff fails to present a cognizable claim.

### 1.    Plaintiff's *Devereaux* claim fails because a more-specific provision of the Fourth Amendment applies to her circumstances.

After *Devereaux*, the Ninth Circuit clarified that the right recognized in that case was a "substantive due process right."  *Huk v. County of Santa Barbara*, 650 F. App'x 365, 366 (9th Cir. 2016); *see Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1110–11 (9th Cir. 2010); *Garcia v. Kernan*, No. 18-2313, 2019 WL 3429175, at \*9 (S.D. Cal. July 30, 2019).  And it is well established that "where a particular 'Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process' must be the guide for analyzing such claims."  *Pryor v. City of Clearlake*, 877 F. Supp. 2d 929, 949 (N.D. Cal. 2012) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)); *Barrera v. City of Woodland*, No. 18-329, 2018 WL 4566897, at \*2 (E.D. Cal. Sept. 21, 2018) ("If a more specific provision of the Constitution applies, substantive due process doesn't.").

Here, Plaintiff challenges government conduct that resulted in her seizure and arrest. *See* Compl. ¶¶ 29–32. Accordingly, she only may proceed, if at all, under the Fourth Amendment, and her *Devereaux* claim under the Fifth Amendment must be rejected. *See Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (holding that "Fourth Amendment principles, and not those of due process, govern," where the plaintiff alleged that the intentional falsification of an autopsy report played a material role in her arrest and prosecution); *Wagda v. Town of Danville*, No. 16-488, 2016 WL 6160160, at *20 (N.D. Cal. Oct. 24, 2016) ("Wagda's allegation that defendants made 'false and misleading statements in police reports' that the D.A.'s Office 'relied upon . . . in its decision to file charges' likewise falls within the ambit of the Fourth Amendment and, accordingly, fails to state a Fourteenth Amendment claim for violation of substantive due process." (citations omitted)); *see also Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017) (holding that an arrest based on allegedly false evidence "fits the Fourth Amendment . . . as hand in glove").

### 2.    Plaintiff's *Devereaux* claim fails because she does not identify the specific fabricated evidence that formed the basis of the charges against her.

To allege a *Devereaux* claim, "the plaintiff must first point to evidence he contends the government deliberately fabricated." *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015). Here, Plaintiff refers to "fabricated charges," a "fabricated case," a "false case," "false evidence," and "false statements" (Compl. ¶¶ 2, 7–8, 11, 12, 14, 20, 22, 26), but she fails to identify the *specific evidence* she contends that the government deliberately "fabricated." *See Iqbal*, 556 U.S. at 678 (holding that conclusory allegations "do not suffice," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also, e.g.*, *Ninh Dinh Pham v. Starkey*, No. 16-5959, 2017 WL 1532049, at *9 (C.D. Cal. Mar. 17, 2017) (dismissing a *Devereaux* claim where the plaintiff alleged "that Defendant fabricated evidence and elicited false testimony from witnesses" but did "not say what that evidence or testimony was," and otherwise "fail[ed] to point to any *actual evidence* that Defendant allegedly fabricated" (emphasis added)), *adopted*, 2017 WL 1536154 (C.D. Cal. Apr. 25, 2017).

To be sure, Plaintiff assails Webster's certifications for Prakash's and Alfredo's T-visa applications, which included portions of the men's statements suggesting their labor was obtained by physical force, physical restraint, or physical harm. Compl. ¶¶ 14–19. But even accepting Plaintiff's

allegations, the certifications themselves were not "evidence" forming the basis of Plaintiff's criminal charges.  Nor is there authority for the theory that an investigator violates a criminal defendant's rights by allegedly misleading a third-party to secure a witness's attendance and testimony at trial.

As for the allegedly dubious portions of Prakash's and Alfredo's statements, Plaintiff cannot plausibly allege that they were "fabricated *by the government*."  *Devereaux*, 263 F.3d at 1075 (emphasis added).  An investigator's failure to reject or doubt a portion of a victim's testimony is not "fabricating" evidence.  *See Fabricate*, *Black's Law Dictionary* (11th ed. 2019) ("To invent, forge, or devise falsely").  On the contrary, "*Devereaux* suggests that investigators must enjoy some measure of constitutional discretion when gauging the truthfulness of the various players in an investigation."  *J.C. v. County of Los Angeles*, No. 18-3045, 2019 WL 4228373, at *4 (C.D. Cal. May 13, 2019).  And while the use of abusive interviewing techniques against witnesses might amount to "fabricating" their testimony, *see Devereaux*, 263 F.3d at 1076, Plaintiff does not allege that Defendants coerced Prakash's and Alfredo's statements by such means.

In conclusory fashion, Plaintiff also avers that Webster and Kizenko wrote "reports for prosecutors" containing Prakash's and Alfredo's statements and omitting unspecified "exculpatory evidence."  *See* Compl. ¶ 13.  It is unclear what reports are referenced here, when they were created, whether they formed the basis of any charges, or what "exculpatory evidence" was omitted.  *See id.*  The alleged failure to recount all the supposed defects in a victim's statement in a "report" cannot maintain a plausible claim for fabricating evidence.  *See Iqbal*, 556 U.S. at 678; *see also, e.g.*, *Souliotes v. City of Modesto*, No. 15-556, 2016 WL 3549266, at *10 (E.D. Cal. June 29, 2016) ("While Plaintiff claims that Defendants 'falsified their reports,' he does not identify any particular report, nor does he show that such a report was relied upon by prosecutors or otherwise affected the fairness of his trial."); *Pellerin v. Nevada County*, No. 12-665, 2013 WL 1284341, at *7–8 (E.D. Cal. Mar. 28, 2013) (rejecting the plaintiff's *Devereaux* claim where he did "not allege the evidence was false, merely that it was incomplete"), *aff'd*, 635 F. App'x 345 (9th Cir. 2015).

**3.    Plaintiff's *Devereaux* claim fails because she does not show that Webster and Kizenko "deliberately" fabricated evidence.**

To state a *Devereaux* claim, a plaintiff must allege specific facts showing the defendant's alleged fabrication of evidence was "deliberate." *Bradford*, 803 F.3d at 386. Such facts, "*at a minimum*," must show the defendant (1) "continued his investigation of the plaintiff even though he knew or should have known that the plaintiff was innocent," or (2) "the defendant used 'investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information.'" *Devereaux*, 263 F.3d at 1076; *Bradford*, 803 F.3d at 386 (brackets in original). Plaintiff cannot satisfy either requirement.

First, Plaintiff cannot plausibly allege that Webster and Kizenko knew or should have known she was innocent. At most, the Complaint attacks the pursuit of one theory of criminal liability: Plaintiff's use of physical force, physical restraint, or physical harm to compel Prakash's and Alfredo's labor. *See* Compl. ¶ 19. But, as noted, the forced-labor statute has "been interpreted broadly to cover harm such as [the] failure to pay wages or threats of immigration harm." *See* Crim. Dkt. ECF 122, at 9:17–10:10 (citing *United States v. Dann*, 652 F.3d 1160, 1171–72 (9th Cir. 2011); *United States v. Calimlim*, 538 F.3d 706, 712 (7th Cir. 2008); *United States v. Djoumessi*, 538 F.3d 547, 552 (6th Cir. 2008)). Nor does Plaintiff show that Webster or Kizenko knew or should have known she was innocent of harboring Prakash and Alfredo for financial gain, obstructing HSI's investigation, or making false statements. *See* Crim. Dkt. ECF 1, at 2–4.[3]

---

[3] *See also, e.g.*, *Long v. Alejo*, No. 15-536, 2016 WL 11756789, at *5 (C.D. Cal. June 8, 2016) ("At various points, Plaintiff stresses that Defendants knew he was not present when Penix attempted to rob and murdered Pineda, and claims that statements from his co-defendants and other evidence corroborate his lack of culpability," but "it is not clear that Plaintiff's absence from the scene of the crimes absolves him of all liability and suggests that Defendants knew or should have known that he was innocent"); *see also Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003) ("The affidavit states Troy, Travis, and Delilah tested 'positive' for sexual abuse when, in fact, the children's tests were only 'suggestive' or 'consistent' with sexual abuse. The affidavit also states that eight children accused Gausvik of sexual abuse when, in fact, only two children had positively identified him to Perez. These claims do not show Perez continued the investigation despite knowing Gausvik was innocent . . . . Gausvik has only shown that Perez carelessly handled the facts and the investigation.").

Plaintiff also does not allege that Webster and Kizenko used coercive and abusive investigative techniques to yield false statements.  At most, Plaintiff avers that Prakash and Alfredo exaggerated portions of their statements to secure T-visas from the government.  *See* Compl. ¶¶ 2, 10.  But providing benefits to victims and witnesses, while subject to disclosure and cross examination, does not amount to the deliberate fabrication of evidence.  Otherwise, practically all cases with cooperation agreements and paid informants would give rise to *Devereaux* claims.

### 4.  Plaintiff's *Devereaux* claim fails because she does not show that her injury would not have occurred absent the allegedly fabricated evidence.

To state a *Devereaux* claim, the plaintiff must show that the alleged fabricated evidence "was the cause in fact of the deprivation of liberty."  *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).  This means "that the injury would not have occurred in the absence of the conduct."  *Id.*; *see, e.g.*, *Alvarez v. Sitts*, No. 19-1071, 2020 WL 5027131, at *13 (D. Or. Aug. 25, 2020) ("Even assuming that plaintiff intends to claim that the . . . officers deliberately fabricated evidence in their arrest reports . . . , this amendment is futile.  The Proposed Complaint does not allege what evidence was provided to whom that led to [the] deprivation of his liberty . . . .  Plaintiff . . . , therefore, cannot show that the allegedly fabricated evidence presented to them caused the arrest, detention, or subsequent charges.").

It must be presumed, moreover, that a prosecutor who brings criminal charges "exercised independent judgment in determining that probable cause for an accused's arrest existed, thereby breaking the chain of causation between an arrest and prosecution and immunizing investigating officers . . . from damages suffered" after the charges were filed.  *See Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008) (internal quotation marks and brackets omitted).  Similarly, a grand-jury indictment "conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry."  *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975).  Here, Plaintiff fails to offer specific, factual allegations sufficient to rebut the presumption of prosecutorial independence or impugn the grand jury's return of the indictment against her.[4]  *See E.E.O.C. v. Farmers Ins. Co.*, 24 F. Supp. 3d 956, 961 (E.D. Cal. 2014) (explaining that courts "must look at a complaint in light of the relevant

---

[4] Webster retired long before the grand jury returned the indictment, and Kizenko retired shortly thereafter, and neither of them testified before the grand jury.

evidentiary standard, in order to decide whether it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (internal quotation marks and brackets omitted)).

Indeed, as noted, Plaintiff attacks one theory under the forced-labor statute: the use of physical force, physical restraint, or physical harm to compel Prakash's and Alfredo's labor.  *See* Compl. ¶ 19. But the forced-labor statute prohibits more subtle forms of coercion, and the prosecutors in Plaintiff's criminal case expressly pursued this theory.  *See* Crim. Dkt. ECF 85, at 2:9–3:5 (stating, "At trial, the government will establish that [Plaintiff] illegally coerced the victims to maintain and improve her 21-acre ranch," and she "obtained the victims' labor and services through a combination of legally prohibited means to include the abuse or threatened abuse of the law or legal process, and threats of financial harm" (citations omitted)).

Plaintiff thus cannot plausibly allege that—absent Webster and Kizenko crediting Prakash's and Alfredo's statements suggesting the use of physical force, physical restraint, or physical harm—she would not have been indicted and arrested.  This is particularly so given that she also was charged with harboring the men for financial gain, obstructing HSI's investigation, and making false statements. Crim. Dkt. ECF 1, at 2–4.  She offers no factual allegations that even attempt to challenge these charges. *See, e.g.*, *Gausvik*, 345 F.3d at 817; *Long*, 2016 WL 11756789, at *5; *Cox v. United States*, No. 16-1222, 2019 WL 297982, at *13 (C.D. Cal. Jan. 22, 2019) ("To the extent Plaintiff argues that he never would have been prosecuted for *any* crimes but for Defendant Casler lying to Defendant Schwark . . . that argument fails."), *adopted*, 2019 WL 295762 (C.D. Cal. Jan. 23, 2019).

**D.**     **Even if the Court created a new *Bivens* remedy under the Fourth Amendment, Plaintiff's unlawful-seizure claim fails as a matter of law.**

The Fourth Amendment requires that arrest warrants be based "upon probable cause, supported by Oath or affirmation."  And, as discussed, a grand-jury indictment "'conclusively determines the existence of probable cause' to believe the defendant perpetrated the offense alleged."  *Kaley v. United States*, 571 U.S. 320, 328 (2014) (quoting *Gerstein*, 420 U.S. at 117 n.19).

The term "conclusively" means "just that," and there is "no 'authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof.'"  *Id.* (quoting *Costello v. United States*, 350 U.S. 359,

362–63 (1956)).  On the contrary, "'the whole history of the grand jury institution' demonstrates that 'a challenge to the reliability or competence of the evidence' supporting a grand jury's finding of probable cause 'will not be heard.'"  *Id.* (quoting *United States v. Williams*, 504 U.S. 36, 54 (1992)); *see also id.* ("The grand jury gets to say—*without any review, oversight, or second-guessing*—whether probable cause exists to think that a person committed a crime." (emphasis added)).

Here, this Court issued a warrant for Plaintiff's arrest based on the grand jury's indictment.  *See* Crim. Dkt. ECF 1, 12.  Even if Plaintiff could collaterally attack the indictment in this civil case (*contra Kaley*, 571 U.S. at 328), her allegations attacking one theory of criminal liability are insufficient.  *See supra* at 18:17–19:2.  Plaintiff cannot plausibly allege that—absent Webster and Kizenko crediting Prakash's and Alfredo's statements suggesting the use of physical force, physical restraint, or physical harm—she would not have been indicted and arrested.  *See Gausvik*, 345 F.3d at 818 (rejecting the plaintiff's Fourth-Amendment claim because, even though "portions of [the defendant's] affidavit were exaggerated or inaccurate," the defendant "had probable cause even without considering the inaccurate sections of the affidavit"); *see also* Crim. Dkt. ECF 122, at 14:18–14:23 (finding "a fair probability that [Plaintiff's] alleged victims feared financial harm in the form of lost unpaid wages or feared immigration harm based on [her] threats to have them deported, and that these fears caused them to continue to work for [her]").  This is particularly so given that Plaintiff also was charged with harboring the men for financial gain, obstructing HSI's investigation, and making false statements, *see* Crim. Dkt. ECF 1, at 2–4, and she offers no specific, factual allegations that call these charges into question.

### E.    Webster and Kizenko are entitled to qualified immunity.

Qualified immunity shields officials from liability so long as their conduct does not violate a clearly established right.  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).  It "is an *immunity from suit* rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  And "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  *Mitchell*, 472 U.S. at 526; *see also Emmons v. City of Escondido*,

921 F.3d 1172, 1174 (9th Cir. 2019) ("A plaintiff 'bears the burden of showing that the right at issue was clearly established.'").

An official violates a clearly established right only if "existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). And it is a "longstanding principle" of qualified immunity that "'clearly established law' should not be defined 'at a high level of generality,'" but rather "must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Courts thus must grant immunity unless the plaintiff can "identify a case where an officer acting under similar circumstances . . . was held to have violated" the applicable constitutional amendment. *Id.*; *see Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (explaining that a plaintiff "must point to prior case law that articulates a constitutional rule specific enough to alert *these* [officers] *in this case* that *their particular conduct* was unlawful").

Here, Plaintiff fails to present specific, factual allegations showing that Defendants violated the Fifth or Fourth Amendments. *See supra* Sections IV.C–D. And regardless, Plaintiff further fails to identify any case clearly establishing that the specific, factual allegations in the Complaint give rise to a claim under the Fourth or Fifth Amendments. *See White*, 137 S. Ct. at 552; *Sharp*, 871 F.3d at 911; *see also* Compl. ¶¶ 25, 28, 30, 32 (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *Bivens*, 403 U.S. at 388; *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 819 (9th Cir. 2020); *Devereaux*, 263 F.3d at 1074–75). Accordingly, Plaintiff's claims are barred by the doctrine of qualified immunity.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss must be granted.

Dated:  August 1, 2022

Respectfully submitted,

PHILLIP A. TALBERT
United States Attorney

By:    /s/ *Joseph B. Frueh*
JOSEPH B. FRUEH
Assistant United States Attorney

Attorneys for Defendants