UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| FIRDOS S. SHEIKH, M.D., <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY; CAROL WEBSTER, Homeland Security Investigations Special Agent, in her individual capacity; EUGENE KIZENKO, Homeland Security Investigations Special Agent, in his individual capacity; and DOES 1-10, inclusive, <br><br> Defendants. | No. 2:22-cv-00409 WBS AC <br><br> MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

Plaintiff Firdos S. Sheikh brought this action asserting claims under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Fourth and Fifth Amendments of the United States Constitution, based on defendants' alleged fabrication of evidence which led to a search of her home and her arrest and prosecution. (Docket No. 1.)

1

Defendants now move to dismiss the complaint in its entirety.[1] (Docket No. 12.)

This court is acutely familiar with plaintiff's allegations, having presided over the criminal case brought against her in 2018, United States v. Sheikh, No. 2:18-cr-119 WBS.[2] In that case, Sheikh was indicted and charged with two counts of trafficking with respect to forced labor under 18 U.S.C. § 1590(a), two counts of harboring for financial gain under 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(B)(i), one count of obstruction of a forced labor investigation under 18 U.S.C. § 1590(b), and one count of false statements under 18 U.S.C. § 1001.

The charges arose out of allegations that Sheikh harbored two aliens ("Alfredo" and "Prakash") and forced them to work on her property in Stockton, California between 2008 and 2013. The government alleged that Sheikh promised to pay Alfredo and Prakash certain wages and provide food and housing, but paid them substantially less than promised, provided little food and substandard housing, required them to work long hours, and threatened them with arrest and deportation. The government also alleged that Sheikh directed Prakash to hide from government

---

[1] Plaintiff does not oppose dismissal of the Department of Homeland Security (Opp'n 2 n.3 (Docket No. 18)), and no Bivens remedy is available against a federal agency, Western Radio Services Co., v. U.S. Forest Service, 578 F.3d 1116, 1119 (9th Cir. 2009). Accordingly, all claims against the Department are hereby DISMISSED.

[2] Given that plaintiff in this case was also the defendant in the criminal case that led to this lawsuit, the court at times refers to plaintiff as "Sheikh" to avoid confusion.

2

1  agents during a welfare check on her property and that Sheikh
2  made false statements to agents during their investigation.
3      The court held multiple hearings in the criminal case,
4  including a three-day evidentiary hearing.  On Sheikh's motion
5  under Brady v. Maryland, 373 U.S. 83 (1963), the court found,
6  among other things, that (1) the government should have disclosed
7  certain evidence and information that primarily undercut the
8  government's allegations of physical force, restraint, or harm,
9  or threats of physical force, restraint or harm; (2) this
10 information was known to government agents, or they should have
11 known it, at the time of the warrant application; and (3) this
12 information tended to show that government agents intentionally
13 or recklessly made false or misleading statements or omissions in
14 their warrant application.  However, the court found that
15 dismissal was not appropriate because the information was
16 disclosed well in advance of trial, the government attorneys did
17 not appear to have made any intentionally or recklessly false
18 statements to the court, and the previously undisclosed material
19 was not obviously Brady material.  (Docket No. 104, Case No.
20 2:18-cr-119 WBS.)
21     The court also addressed whether the evidence of the
22 search of Sheikh's property should be suppressed under Franks v.
23 Delaware, 438 U.S. 154 (1978).  The court expressed its serious
24 concern with the warrant affidavit's portrayal of forced labor
25 via use of physical, force, restraint, and harm, and threats of
26 physical force, restraint, and harm, given its description of
27 Prakash and Alfredo being restrained by a fence, a locked gate,
28 and surveillance cameras, without enough food to eat and no way

to escape or obtain food or help, when in fact, the alleged victims could have walked off the property by stepping over the short fence and could have obtained food at the shopping center down the road.

The court was also concerned that the affidavit did not disclose any information about the benefits alleged victims of forced labor receive from the government or from a certain outside organization, such as food, housing, and temporary status, which may have created an incentive to exaggerate their conditions.  In the court's view, this information should have been disclosed to the Magistrate Judge to enable him to fairly assess whether there was probable cause before issuing the search warrant, and the warrant affiant recklessly omitted these facts from the affidavit presented to the Magistrate Judge because he should have known his affidavit overstated the gravity of physical force, restraint, and harm, or threats of physical force, restraint, and harm faced by Prakash and Alfredo. However, the court found that even excluding these allegations, the warrant affidavit raised a fair probability that the alleged victims feared financial harm in the form of lost unpaid wages or feared immigration harm based on Sheikh's threats to have them deported, and thus the warrant affidavit provided probable cause for a violation of 18 U.S.C. § 1589.  (Docket No. 122, Case No. 2:18-cr-119 WBS.)  Accordingly, the court denied Sheikh's Franks motion.

Eventually, however, the court dismissed Sheikh's indictment under the Speedy Trial Act, 18 U.S.C. § 3161, finding that if the government had timely disclosed all Brady material,

the case would have proceeded to trial before COVID-19 led to the suspension of all trials in the Eastern District of California, and that the ends of justice required dismissal.  (Docket No. 151, Case No. 2:18-cr-119 WBS.)  The court's dismissal was without prejudice, though the government has not re-indicted Sheikh.

Sheikh eventually filed the complaint in this case against the Department of Homeland Security and Carol Webster and Eugene Kizenko, former special agents for Homeland Security Investigations ("HSI"), an investigative arm of the Department of Homeland Security.  The complaint alleges that Agents Webster and Kizenko conducted a warrantless "welfare check" on her property on July 1, 2013, and Kizenko obtained the search warrant used to conduct a search of her property on July 8, 2013.  Webster and Kizenko allegedly (1) knew that the claims of Prakash, Alfredo, and a third individual who had worked for Sheikh were false and exaggerated; (2) intentionally wrote reports for prosecutors that omitted exculpatory evidence; and (3) actively supported Prakash's and Alfredo's fraudulent T-Visa applications.  Based on defendants' allegedly falsified evidence, Sheikh's property was searched, she was indicted and held in jail for several hours, her reputation in the community was destroyed, and she suffered severe emotional distress.

I.   Discussion

As discussed above, this court has already expressed its deep concern with the actions of Agent Webster and Agent Kizenko.  However, the court must here determine whether Sheikh's claims are permitted under Bivens and subsequent Supreme Court

5

1 precedent.

2 While plaintiffs may bring claims under 42 U.S.C. § 1983 against state and local actors, § 1983 does not apply to federal defendants, and Congress has not created a parallel statute for constitutional violations by federal actors.[3] Ziglar v. Abbasi, 137 S. Ct. 1843, 1854 (2017). Nevertheless, in Bivens and two other cases, Davis v. Passman, 442 U.S. 228 (1979), and Carlson v. Green, 446 U.S. 14 (1980), the Supreme Court recognized an implied cause of action under (1) the Fourth Amendment against federal agents who arrested the plaintiff and searched his home without a warrant; (2) the Fifth Amendment for a former congressional staffer's sex discrimination claim; and (3) the Eighth Amendment for a federal prisoner's inadequate-care claim, respectively.

The Supreme Court most recently examined Bivens claims in Egbert v. Boule, 142 S. Ct. 1793 (2022). The Egbert court explained that since Bivens, Davis, and Carlson, it has not implied any additional causes of action under the Constitution, despite multiple opportunities to do so, noting (1) the tension between judicially created causes of action and the separation of powers under the Constitution and (2) Congress' superior position to consider the policy considerations of creating a cause of

---

[3] One may argue that Congress has not created a federal cause of action against federal actors because it had no need to, given the availability of Bivens remedies. However, such argument ignores the fact that once the Supreme Court extended § 1983 to constitutional violations by state and local actors in Monroe v. Pape, 365 U.S. 167 (1961), Congress did not create any cause of action against federal actors in the subsequent ten years before Bivens was decided.

6

action.  Given these concerns, "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, the courts must refrain from creating it."  Id. at 1802-03 (citing, inter alia, Ziglar, 137 S. Ct. 1858).  "Even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy," and "[i]f there is a rational reason to think that" Congress should decide whether to provide for a damages remedy, "[n]o Bivens action may lie."  Id.

Based on this understanding, the Supreme Court has set forth a two-step test to determine whether a plaintiff may assert a Bivens claim.  A court presented with a Bivens claim must examine (1) "whether the case presents a new Bivens context, -- i.e., is it meaningfully different from the three cases in which the Supreme Court has implied a damages action;" and (2) if the claim arises in a new context, whether there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed."  Id. at 1803 (quoting Ziglar, 137 S. Ct. 1858-60) (internal punctuation omitted).

Here, both of Sheikh's claims arise in a new context.  The Supreme Court has explained that a claim may present a new context because of, among other things,

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of special factors that previous Bivens cases did not consider.

7

Ziglar, 137 S. Ct. at 1860.  "When one or more meaningful differences exist, it is not enough to identify a few similarities."  Ahmed v. Weyker, 984 F.3d 564, 570 (8th Cir. 2020).  "A claim may arise in a new context even if it based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized," Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020), because "even a modest extension is still an extension," Ziglar, 137 S. Ct. at 1864.  Thus, the fact that Bivens involved the Fourth Amendment and Davis involved the Fifth Amendment is not enough to show that plaintiff's claims under the Fourth and Fifth Amendment do not arise in a new context.

The only Supreme Court case finding a Bivens claim under the Fifth Amendment involved an employment discrimination claim, which is clearly a different context than plaintiff's Fifth Amendment fabrication of evidence claim.  See, e.g., Cantu v. Moody, 933 F.3d 414, 422 (5th Cir. 2019) (explaining that Davis, 442 U.S. 228, does not hold that "the entirety of the Fifth Amendment's Due Process Clause is fair game in a Bivens action"); Annappareddy v. Pascale, 996 F.3d 120, 134 (4th Cir. 2021) (fabrication and destruction of evidence claims were "far afield from the sex discrimination context presented in Davis").

While there is some similarity between plaintiff's Fourth Amendment claim and that in Bivens, the numerous differences between the claims make this a new context.  Bivens involved a warrantless search where the plaintiff was manacled in front of his family, his family was threatened with arrest, his apartment was searched, and then he was strip searched after booking.  The alleged misdeeds here are materially different from

those in Bivens, in that the fabrication of false evidence in the context of "information-gathering and case-building activities are a different part of police work than the apprehension, detention, and physical searches at issue in Bivens." See Farah v. Weyker, 926 F.3d 492, 498 (8th Cir. 2019). Further, searches and seizures conducted with a warrant are meaningfully different from searches and seizures without a warrant, as they involve a different legal mandate and different judicial guidance regarding officer conduct. See Annappareddy, 996 F.3d at 135-36; Cantu, 933 F.3d at 423.[4]

The court finds that special factors also indicate that Congress is better equipped to weigh the costs and benefits of allowing a damages action to proceed here. See Egbert, 142 S. Ct. at 1803. Foremost of these special factors is the existence of remedial processes. As defendants point out, the Hyde Amendment, Pub. L. No. 105-119, 111 Stat. 2440, 2519 (1997), allows courts to award attorney's fees to criminal defendants who prevail against bad faith prosecutions, and the Department of Homeland Security is required to investigate any "[a]lleged violations of the standards for enforcement activities" under 8 C.F.R. § 287.10(a)-(b), which can and has led to criminal prosecutions of individuals violating these standards. See, e.g., De La Paz v. Coy, 786 F.3d 367, 376-77 (5th Cir. 2015) (rejecting Bivens claim against Border Patrol agents in part due to the existence of § 287.10(a)-(b)), even though plaintiffs

---

[4] Defendants have identified other "meaningful differences" in their briefs but the court does not discuss all of them.

complained they had no damages remedy against individual agents under applicable immigration law).

Notably, this very regulation, § 287.10, was pointed to by the Supreme Court in Egbert as an available remedy that foreclosed a Bivens action against Border Patrol agents employed by the Department of Homeland Security. 142 S. Ct. at 1806-07. Egbert explained that "it [does not] matter that existing remedies do not provide complete relief" or if "a court independently concludes" that administrative remedies "are not as effective as an individual damages remedy." 142 S. Ct. at 1804, 1807 (citations and internal punctuation omitted). Further, even remedies that provide no compensation for victims or little deterrence may weigh against recognizing a Bivens claim, as "[t]he fact that Congress has expressly provided a damages remedy for some victims of [a] particular type of injury, but not for others, suggests that it considered the issue and made a deliberate choice." Farah, 926 F.3d at 501-02. Overall, the existing remedies available to address defendants' alleged misconduct, while perhaps providing little redress to Dr. Sheikh personally, weigh against extending Bivens here.

The court recognizes plaintiff's argument that the judiciary may have an interest in enforcing a remedy for fabrication of evidence in a criminal case, which directly affects the integrity of the judicial process. However, the remedy plaintiff would have the court provide is simply to permit a Bivens claim against the individual officers for fabrication of evidence. Congress on the other hand is much better equipped than the courts to fashion a remedy tailored to address this

10

1    particular concern.  For example, Congress could elect to enact a
2    statutory scheme similar to that in the Federal Tort Claims Act,
3    28 U.S.C. §§ 1346(b) and 2671 et seq., where Congress authorized
4    suits against the United States to recover damages for the
5    negligence or wrongful acts of government employees
6    preconditioned upon the filing of an administrative claim with
7    the appropriate agency.
8         Sheikh relies heavily on the case Lanuza v. Love, 899
9    F.3d 1019 (9th Cir. 2018), for the proposition that allowing a
10   Bivens claim here would not present a new context, and that no
11   special factors weigh against extending her claims here.  The
12   court notes that while Lanuza has not been explicitly overruled,
13   its more permissive approach to Bivens claims was implicitly
14   overruled by Egbert.  Notably, Egbert reversed a Ninth Circuit
15   decision which had allowed a Bivens claim to proceed and which
16   relied in part on its prior decision in Lanuza.  See Boule v.
17   Egbert, 998 F.3d 370, 389 (9th Cir. 2021).  Accord Hoffman v.
18   Preston, 50 F.4th 927 (9th Cir. 2022) (withdrawing prior
19   published decision, 26 F.4th 1059 (9th Cir. 2022), which had
20   allowed a "modest expansion" of Bivens, in light of Egbert);
21   Hoffman v. Preston, No. 20-15396, 2022 WL 6685254 (9th Cir. Oct.
22   11, 2022) (subsequent unpublished memorandum disposition
23   affirming the district court's dismissal of the same Bivens
24   claim).[5]
25        The court's conclusion that Lanuza was implicitly

---

[5] The Lanuza court also did not address the ability of individuals to lodge complaints with the Department of Homeland Security, a remedial scheme the Supreme Court found key in Egbert.

11

overruled is reinforced by the Ninth Circuit's published decision in Mejia v. Miller, 2022 WL 16911857, --- F.4th ---- (9th Cir. 2022), issued just two days ago on the same day as oral argument in this case.  There, the Ninth Circuit noted that after Egbert, "[t]he question is no longer whether the Judiciary is well suited," to weigh the costs and benefits of allowing a damages action to proceed, as stated by Ziglar, 137 S. Ct. at 1857-58, "but whether Congress is better suited."  2022 WL 16911857, at *4 (emphasis added).  This ruling is directly contrary to the analysis in Lanuza, which applied Ziglar and determined that the judiciary was well-equipped to weight the costs and benefits of allowing the plaintiff's fabrication of evidence claim.  See Lanuza, 899 F.3d at 1032-34.  The Mejia court further noted that "reading the Egbert majority opinion as a whole, it conveys a heightened restriction on Bivens."  Id. at *5.

Applying Egbert, the Mejia court found that the plaintiff could not assert a Bivens claim for excessive force against a Bureau of Land Management ("BLM") officer because, among other things, (1) the legal mandate under which the officer was operating was new, because the BLM has a different mandate from other federal agencies; (2) no Supreme Court case had ever recognized a Bivens excessive force claim against a BLM officer; (3) allowing a Fourth Amendment excessive force claim against BLM officers would have systemwide consequences for BLM's mandate to maintain order on federal lands; and (4) the plaintiff had an alternative remedy, specifically the ability to report the officer's alleged misconduct via the BLM's complaint process.  Id.

Applying the same framework here as the Ninth Circuit did in Mejia, it is clear that plaintiff cannot proceed with her Bivens claims in this case. The Supreme Court has never extended a Bivens claim against Department of Homeland Security employees, and DHS employees clearly have a different legal mandate than the Federal Bureau of Narcotics agents at issue in Bivens. Allowing Bivens claims against DHS employees would also potentially have systemwide consequences for DHS' ability to investigate and prosecute cross-border human trafficking and enforce and implement this nation's immigration laws. See Egbert, 142 S. Ct at 1803-04. Finally, as discussed above, there are alternative remedies to address DHS misconduct through the Hyde Amendment and administrative complaints. Overall, Congress is better equipped to weigh the costs and benefits of extending Bivens to allow plaintiff's claims here.

Thus, while Lanuza has not been explicitly overruled, Egbert and Mejia require dismissal of plaintiff's complaint. Henceforth, it must be up to the Congress to provide whatever federal remedy may be available to victims of the sort of official misconduct alleged here. As Judge Halbert so presciently taught us more than 65 years ago,

> Courts may, and should, interpret the law as it has been legally created or enacted, but courts should not add to, subtract from, repeal, or promulgate laws on their own initiative. In other words, the courts may clarify and make workable the laws that have been legally created, but the courts may not under our form of government judicially legislate. It is one of the fundamental principles of our form of government that the legislative power shall be separated from the judicial power. The power to declare what the law shall be belongs to the legislative branch of government; the power to declare what the law is, or

13

       has been, belongs to the judicial branch of the government.

In re Shear, 139 F. Supp. 217, 220 (N.D. Cal. 1956).  Justice Gorsuch reaffirmed this proposition in his concurrence in Egbert when he noted that "[w]eighing the costs and benefits of new laws is the bread and butter of legislative committees.  It has no place in federal courts charged with deciding cases and controversies under existing laws."  142 S. Ct. at 1810.

II.  Leave to Amend

      Plaintiff requested leave to amend in her opposition to the motion to dismiss.  "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility."  Cal. Architectural Bldg. Prods. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1987).  While leave to amend must be freely given, the court is not required to allow futile amendments.  See DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).  Plaintiff does not propose, nor can the court conceive of, any factual allegations that could remedy the complaint to allow her to raise her Bivens claims.  Under the circumstances, allowing plaintiff to amend her complaint would only serve to increase plaintiff's litigation expenses and further tax the time and resources of the court and the government.  Accordingly, the court will not grant plaintiff leave to amend.

      IT IS THEREFORE ORDERED that defendants' motion to dismiss (Docket No. 12) be, and the same hereby is, GRANTED without leave to amend.  The Clerk of Court is directed to close this case.

///

Dated: November 16, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE